2011-02255
FILED
April 21, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003439214

BRAD A. MOKRI, SBN: 208213
JENNIFER N. HUPE, SBN: 256009
LAW OFFICES OF MOKRI & ASSOCIATES
1851 E. First Street, Suite 900
Santa Ana, California 92705
Telephone No.: (714) 619-9395
Facsimile No.: (714) 619-9396

Attorney for Plaintiff
HERITAGE PACIFIC FINANCIAL LLC.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISIONAL OFFICE

| | |
|---|---|
| In Re: | Chapter 7 |
| | Bankruptcy No. : 2:11-bk-22262 |
| MAY DAVID HENG | Adversary Case No.: |
| | |
| Debtor. | |
| | |
| HERITAGE PACIFIC FINANCIAL, LLC. | **PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT** |
| D/B/A HERITAGE PACIFIC FINANCIAL, a Texas Limited Liability Company, | **[11 U.S.C. §523(a)(2)(A); 11 U.S.C. §523(a)(2)(B)]** |
| Plaintiff, | |
| vs. | |
| MAY DAVID HENG | DATE: See Summons |
| | |
| Defendant. | |

## COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF DEBT AND FOR JUDGMENT

Plaintiff, through its attorney, Brad A. Mokri, of Law Offices of Mokri & Associates, states as follows:

## PARTIES AND JURISDICTION

1. This is an adversary proceeding in bankruptcy brought by Heritage Pacific Financial, LLC. dba Heritage Pacific Financial pursuant to 11 U.S.C. § 523.

2. Defendant filed a Chapter 7 bankruptcy petition on May 02, 2011. Jurisdiction is vested in this proceeding pursuant to 28 U.S.C. § 157, 28 U.S.C. §1334, and 11 U.S.C. § 523; this matter is a core proceeding.

4. Plaintiff is a creditor of defendant. Plaintiff is the assignee and current owner and/or holder of Defendant's loan and related mortgage note.

## GENERAL ALLEGATIONS

5. Plaintiff is informed and believes, and thereon alleges that in an effort to obtain funds to purchase and/or refinance a property, Defendant completed, or caused to have completed on his behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed. A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein.

6. Defendant obtained loans evidenced by promissory notes executed by Defendant. Plaintiff is the true and current owner and holder of Defendant's loan and related promissory note. A true and correct copy of the Note is attached as **Exhibit "B"** and incorporated by reference herein.

7. Defendant certified the accuracy of the information contained in the Loan Application and expressly consented to the verification and re-verification of the information contained therein.

8. Among other information required to be certified, and in fact certified, by Defendant on the Loan Application, was information regarding Defendant's current employer, gross monthly income, and intent to use the property securing the loan as Defendant's primary residence.

9. Defendant knew that his then-current income was insufficient to obtain the loans,

and in an effort to secure the more favorable primary-residence financing rate, Plaintiff is informed, believes and thereon alleges that Defendant provided, prepared, or caused to be prepared, a Loan Application which materially misstated Defendant's employment, income and/or intended use of the property as a primary residence; and caused Defendant's agent to submit to the lender a materially false Loan Application and other materially false documents related thereto.

10.     Plaintiff is informed, believes, and thereon alleges that Defendant directed, instructed, and caused to have his materially false Loan Application and supporting documentation transmitted to Defendant's lender knowing that the information in the Loan Application and supporting documentation was materially false.

11.     The lender did not know, and had no reason to know, that the information and documentation provided by Defendant in and in conjunction with the Loan Application was false. In reliance on the information and documentation provided by Defendant, the lender approved Defendant's Loan Application.

12.     Defendant executed a promissory note in favor of the lender, pursuant to which Defendant agreed and promised to repay the loan according to the terms of the promissory note. The proceeds of the loan, as stated in the promissory note, were to be used to purchase and/or refinance the property securing the promissory note.

13.     The lender fully performed, including by disbursing the loan proceeds to Defendant. The lender and/or its assignees duly assigned Defendant's loan and promissory note to Plaintiff, who is currently the owner and holder of Defendant's loan and promissory note.

14.     Defendant defaulted on his payment obligations and obligation to re-verify the information contained in the Loan Application despite the Plaintiff's request therefore.

15.     Plaintiff is informed, believes, and thereon alleges that in applying for the loan, the Defendant knowingly misstated her monthly income on his Loan Application and concealed his true income. Plaintiff is further informed and believes that the Defendant knowingly misstated the status of his employment on the Loan Application and concealed his true employment status. Plaintiff is further informed and believes that Defendant misrepresented his residency such that the

property securing the loan was not Defendant's primary residence, and concealed his true residency status.

16.     The promissory note was duly assigned by the original lender and/or its assignees to Plaintiff, who is the current owner and/or holder of Defendant's Loan and related mortgage note.

17.     Plaintiff is not barred from pursuing this action by any anti-deficiency statute or rule. Plaintiff does not seek a deficiency judgment for the balance of a promissory note following foreclosure, but rather seeks a judgment for Defendant's fraud in connection with their loan application, as alleged herein. Plaintiff has attempted to resolve this matter prior to filing this complaint by contacting Defendant.

## FIRST CLAIM FOR RELIEF

### False Pretenses, False Representation or Actual Fraud

### [11 U.S.C. § 523(a)(2)(A)]

18.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 17, above.

19.     In an effort to obtain funds to purchase and/or refinance their property, Defendant completed, or caused to have completed on their behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed. A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein.  Defendant utilized this loan, creating a balance due and owing on this loan of $53,224.27 including interest as of the date the bankruptcy petitioner was filed.

20.     Defendant obtained the money by false pretenses, a false representation and actual fraud by misrepresenting that the money obtained for the purpose of purchasing a property for his primary residence. Defendant misrepresented her intended use of the property as his primary residence as the property was being purchased for another individual.

21.    The lender did not know, and had no reason to know, that defendant misrepresented his intended use of the property and in reliance on the information approved the loan.

22.    At the time of obtaining the money from the lender execution of the loan, Defendant failed to disclose to Lender that he did not and would not use the property as his primary residence. Lender justifiably relied on Defendant's representation and paid money for the purchase of a primary residence.

23.    By reason of the foregoing, Defendant obtained money from the lender through false pretenses, false representations and actual fraud. Defendant's actions constitute material misrepresentations of the facts. Defendant intended for the lender to rely on the misrepresentation.

24.    Lender reasonably relied upon Defendant's misrepresentations and was induced to lend money to Defendant by those misrepresentations.

25.    Within the three years prior to the filing of this Complaint, through its independent investigation and collection attempts, Plaintiff discovered that the representations made on Defendant's Loan Application were false.

26.    As a result of Defendant's conduct, Plaintiff has suffered damages at a minimum in the amount of $53,224.27 plus interest and reasonable attorney fees. Pursuant to 11 USC § 523(a)(2)(A), Defendant should not be granted a discharge of this debt to the Plaintiff in the amount of $53,224.27 plus interest and reasonable attorney fees.

## SECOND CLAIM FOR RELIEF

### Use of False Statement in Writing

### [11 U.S.C. § 523(a)(2)(B)]

27.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25, above.

28.    In an effort to obtain funds to purchase and/or refinance their property, Defendant completed, or caused to have completed on their behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed.

A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein. Defendant utilized this loan, creating a balance due and owing on this loan of $53,224.27 including interest as of the date the bankruptcy petitioner was filed.

29. In an effort to obtain the funds, Defendant caused to have completed on his behalf, a Uniform Residential Loan Application, otherwise known as a 1003 Form, which Defendant executed and signed.

30. On the Uniform Residential Loan Application, Defendant certified the accuracy of the information contained therein including but not limited to financial condition of Defendant and consented to the verification and re-verification of the information contained therein.

31. Among the information provided and certified by Defendant in his Uniform Residential Loan Application, Defendant was required to certify information regarding his current employer, statements of his gross monthly income, and to certify that his intended to use the loan proceeds to purchase real property which Defendant intended to use as his primary residence.

32. In furtherance of his effort, because Defendant knew that his then current income was insufficient to support the approval of the loan and/or in an effort to secure the more favorable primary-residence financing rate, Plaintiff is informed, believes and thereon alleges that Defendant:

a) Provided, prepared, caused to be prepared, false loan applications, which misstated his employment, income and/or intended use of the property as a primary residence;

b). Certified a false loan application, which misstated his employment income and/or intended use of the property as a primary residence; and

c). Caused his agents to submit to lenders a false loan application and other loan related documents

33. The lender did not know, and had no reason to know, that the information and documentation provided by Defendant in, and in conjunction with, his loan applications was

false, and in reliance on the information and documentation provided by Defendant to the lender therein approved the loan.

34. Defendant executed a promissory note in favor of his initial lender, its successors, transferees, and assigns. In the loan application Defendant expressly represented to the original lender and to its successor in interest the accuracy of the information.

35. The proceeds of the loan, as referenced in the promissory note, were to be used by Defendant in the purchase or refinance of the property described therein. In exchange, Defendant agreed and promised to pay according to the mutually agreed upon terms and conditions more particularly described in the promissory notes.

36. Lender fully performed, and Defendant acquired title to the property. The promissory note was duly assigned by the original lender and/or its assignees to Plaintiff, who is the current owner and/or holder of Defendant's Loan and related mortgage note.

37. Defendant has defaulted on his obligations to pay and to re-verify the information contained in the Uniform Residential Loan Application. Despite Plaintiff's attempts to secure information from Defendant to re-verify the information contained in his loan application, Defendant has failed and/or refused to comply with Plaintiff's requests.

38. Within the three years prior to the filing of this Complaint, through its independent investigation and collection attempts, Plaintiff discovered that the representations made on Defendant's Loan Application were false.

39. By reason of the foregoing, Defendant obtained money by using a statement in writing that falsely represented Defendant's financial condition on which the lender relied on. Defendant submitted the loan application with the intent to deceive the lender. Defendant, therefore, had a specific intent to defraud his lender.

40. Defendant's actions constitute material misrepresentations of the facts. Defendant intended for his ender to rely on those misrepresentations. Lender did rely upon Defendant's misrepresentations of repayment and was induced to lend money to Defendant by those misrepresentations. Lender reasonably relied on Defendant's misrepresentations.

41. As a result of Defendant's conduct, Plaintiff has suffered damages at a minimum in the amount of $53,224.27 plus interest and reasonable attorney fees. Pursuant to 11 USC § 523(a)(2)(B), Defendant should not be granted a discharge of this debt to the Plaintiff in the amount of $53,224.27 plus interest and reasonable attorney fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

1. A monetary judgment against Defendant in the amount of $53,224.27, plus accrued interest at the contractual rate, plus, additional interest at the contractual rate, which will continue to accrue until the date of judgment herein;

2. An order determining that such debt is non-dischargeable under 11 USC § 523(a)(2)(A) and (B);

3. An order awarding Plaintiff its attorneys' fees and costs incurred herein; and

4. An order awarding Plaintiff such additional relief as this Court deems just and equitable.

Dated: April 20 , 2011      **Respectfully Submitted,**

**LAW OFFICES OF MOKRI & ASSOCIATES**

By: /S/ BRAD A. MOKRI .

     Brad A. Mokri
     Attorney for Plaintiff
     Heritage Pacific Financial, LLC. dba
     Heritage Pacific Financial

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA ☒ Conventional ☐ Other (explain): ☐ FHA ☐ USDA/Rural Housing Service | Agency Case Number — | Lender Case Number 00042842B7 |
|---|---|---|---|

| Amount $ 53,980.00 | Interest Rate 8.875 % | No. of Months 360 | Amortization Type: ☐ Fixed Rate ☒ Other (explain): REGULAR BALLOON ☐ GPM ☐ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 2465 GENOVA ST UNIT 5 SACRAMENTO California 95691 | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) SEE PRELIM | Year Built 2005 |
|---|---|

| Purpose of Loan ☒ Purchase ☐ Construction ☒ Other (explain): 2ND LIEN ☐ Refinance ☐ Construction-Permanent | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) MAY DAVID HENG | Manner in which Title will be held AN UNMARRIED MAN | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) CHECKING/SAVING |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) MAY DAVID HENG | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number ...1493 | Home Phone (incl. area code) | DOB(MM/DD/YYYY) ...1982 | Yrs. School 00 | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married ☒ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. ages | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent No. Yrs. 2 ☒ RENT FREE 11 mos. 3351 TIERRA NUEVO WAY SACRAMENTO, California 95838 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. mos. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. mos. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. mos. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer ☒ Self Employed MAY DAVID HENG 3351 TIERRA NUEVO WAY SACRAMENTO, CA 95838 | Yrs. on this job 2/6 Yrs. employed in this line of work/profession 3 | Name & Address of Employer ☐ Self Employed | Yrs. on this job / Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business NOTARY/NOTARY | Business Phone (incl. area code) 9167994442 | Position/Title/Type of Business / | Business Phone (incl. area code) |
|---|---|---|---|

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer ☐ Self Employed | Dates (from – to) | Name & Address of Employer ☐ Self Employed | Dates (from – to) |
|---|---|---|---|
| | Monthly Income | | Monthly Income |
| Position/Title/Type of Business / | Business Phone (incl. area code) | Position/Title/Type of Business / | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from – to) | Name & Address of Employer ☐ Self Employed | Dates (from – to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business / | Business Phone (incl. area code) | Position/Title/Type of Business / | Business Phone (incl. area code) |

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4

Initials: ___

NATL21N(CA) (0305).01    VMP Mortgage Solutions, Inc. (800)521-7291



EXHIBIT

A

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 5,000.00 | $ | $ 5,000.00 | Rent | $ | //////// |
| Overtime | | | | First Mortgage (P&I) | | $ 1,575.75 |
| Bonuses | | | | Other Financing (P&I) | | 429.49 |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | 192.00 |
| Total | $ 5,000.00 | $ | $ 5,000.00 | Total | $ | $ 2,197.24 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | / | $ |
| | / | |
| | / | |

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | $ Payment/Months | $ |
| | | Name and address of Company | | |
| List checking and savings accounts below | | DISCOVR CD | 10.00/7 | 69.00 |
| Name and address of Bank, S&L, or Credit Union | | | | |
| GOLDEN1 | 30,000.00 | | | |
| | | | | |
| WELLS FARGO | 3,000.00 | Acct. no. [        ]4035 | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | 1FBUSA | 10.00/15 | 150.00 |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | | |
| | | Acct. no. [        ]0860 | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | AMEX | 56.00/33 | 1,869.00 |
| | | | | |
| | | Acct. no. [        ]4352 | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | US DEPT ED | 124.00/105 | 13,054.00 |
| | | | | |
| | | Acct. no. [        ]4931 | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/ number & description) | $ | | / | |
| | < > | | | |
| | < > | Acct. no. | | |
| | < > | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | / | |
| Face amount: $ < > | | | | |
| Subtotal Liquid Assets | $ 33,000.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | / | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | //////// |
| Furniture | | | | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | //////// |
| | | Total Monthly Payments | $ 190.00 | |
| Total Assets a. | $ 33,000.00 | Net Worth (a minus b) ▶ $ 17,859.00 | Total Liabilities b. | $ 15,141.00 |

NATL21N(CA) (0305).01    Initials: [signature]    Page 2 of 4    Freddie Mac Form 65 01/04 / Fannie Mae Form 1003 01/04

## Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ 269,900.00 |
| b. | Alterations, improvements, repairs | |
| c. | Land (if acquired separately) | |
| d. | Refinance (incl. debts to be paid off) | |
| e. | Estimated prepaid items | 131.30 |
| f. | Estimated closing costs | 694.15 |
| g. | PMI, MIP, Funding Fee | |
| h. | Discount (if Borrower will pay) | |
| i. | Total costs (add items a through h) | 825.45 |
| j. | Subordinate financing | 53,980.00 |
| k. | Borrower's closing costs paid by Seller | |
| l. | Other Credits (explain) | |
| | BORROWER PD CLOSING COST | 881.75 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 53,980.00 |
| n. | PMI, MIP, Funding Fee financed | |
| o. | Loan amount (add m & n) | 53,980.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | (108,016.30) |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|
| | | Yes | No | Yes | No |
| a. | Are there any outstanding judgments against you? | | X | | |
| b. | Have you been declared bankrupt within the past 7 years? | | X | | |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. | Are you a party to a lawsuit? | | X | | |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. | Is any part of the down payment borrowed? | | X | | |
| i. | Are you a co-maker or endorser on a note? | | X | | |
| j. | Are you a U.S. citizen? | X | | | |
| k. | Are you a permanent resident alien? | | X | | |
| l. | Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. | Have you had an ownership interest in a property in the last three years? | | X | | |
| | (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| | (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**\* PLEASE SEE ATTACHED ADDENDUM TO FNMA 1003 REGARDING BALLOON MORTGAGE**

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 9/23/05 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [X] I do not wish to furnish this information. | CO-BORROWER | [ ] I do not wish to furnish this information. |
|---|---|---|---|
| Ethnicity: | [ ] Hispanic or Latino   [ ] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino   [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American   [ ] Native Hawaiian or Other Pacific Islander   [ ] White | Race: | [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American   [ ] Native Hawaiian or Other Pacific Islander   [ ] White |
| Sex: | [ ] Female   [ ] Male | Sex: | [ ] Female   [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | PARINO, NICK | National City Mortgage |
| [ ] Face-to-face interview | Interviewer's Signature                    Date | a division of |
| [ ] Mail | | National City Bank of Indiana |
| [ ] Telephone | 8/25/2005 | |
| [X] Internet | Interviewer's Phone Number (incl. area code)   (916) 564-9500 (PROCESS SITE) | 2260 DOUGLAS BLVD SUITE 250-B   ROSEVILLE, CA  95661 |



## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: MAY DAVID HENG | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: ████84287 |

**LIABILITIES CONT'D:**

Account No-

Account No-

Account No-

Account No-

Account No-

Account No-

Account No-

Account No-

Account No-

Account No-

Account No-

Account No-

Account No-

Account No-

Under California Civil Code 1812.30(j) "Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account."

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X | Date 9/23/05 | Co-Borrower's Signature: X | Date |
|---|---|---|---|

MAY DAVID HENG

| DETAIL – CASH ACCOUNTS | ACCT # | Balance |
| --- | --- | --- |
| GOLDEN1 | 9288 | 30,000.00 |
| WELLS FARGO | | 3,000.00 |

B1/2 Total Net Proceeds

BANK DEPOSIT TOTAL:          33,000.00

OTHER EMPLOYMENT INCOME:

/
/

ADD'L AUTOS OWNED:                              CASH/MARKET VALUE

ACKNOWLEDGED BY:                               ACKNOWLEDGED BY:

MAY DAVID HENG              DATE: 1/23/05      _____
                                                              DATE:

# ADJUSTABLE RATE NOTE

**(Initial Period: Interest Only; Subsequent Period: One-Year London Interbank Offered Rate ("LIBOR") Index, Rate Caps)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

September 20 , 2005        ROSEVILLE        CALIFORNIA

[Date]        WEST     [City]

2465 GENOVA ST UNIT 5 SACRAMENTO , California 95691

[Property Address]

CERTIFIED TO BE A TRUE COPY
Chicago Title Company
By_____

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    215,920.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is ELEGEN HOME LENDING, LP

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.000 % (the "Initial Interest Rate") for the first **Sixty** ( 60 ) months of the term of this Note (the "Interest Only Period"). The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(b) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest during the Interest Only Period, and principal and interest thereafter, by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on November , 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1 , 2035 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at National City Mortgage Co. P O Box 54828 , Los Angeles, CA 90054-0828 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,079.60 before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as describe in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

EXHIBIT B

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The Initial Interest Rate I pay may change on the first day of October , 2010 , and on that day every year thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index.
The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND 3/4THS percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be the new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.000% or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.000 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment

The date of my First payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.



5. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.

I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consists only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payment consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of (i) interest only during the Interest Only Period or (ii) principal and interest after the Interest Only Period.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under this Note and Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
MAY DAVID HENG              Borrower

_____(Seal)
                           Borrower

_____(Seal)
                           Borrower

_____(Seal)
                           Borrower

_____(Seal)
                           Borrower

_____(Seal)
                           Borrower

_____(Seal)
                           Borrower

_____(Seal)
                           Borrower

*[Sign Original Only]*



# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF WEST SACRAMENTO, COUNTY OF YOLO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM CONSISTING OF:

Parcel One:

Unit 5 in Building 1, consisting of certain air space and elements, as described in that certain "Condominium Plan for Riva" ("Plan"), which Plan recorded June 17, 2005, as Document No. 2005-0028859 of the Official Records of said County,

EXCEPTING AND RESERVING THEREFROM, nonexclusive easements for access, ingress, egress, encroachment, maintenance, repair, drainage, support, and for other purposes, all as described in the Declaration referred to below;

Parcel Two:

An undivided 1/7th fee simple interest as tenant in common in Building 1 (the "Condominium Building"), as said Building is shown on that certain "Condominium Plan for Riva", which Plan was filed in the Office of the Yolo County Recorder on June 17, 2005, as Document No. 2005-0028859, EXCEPTING THEREFROM the following: (a) Units 1 through 7, inclusive, located in Building 1, thereon, (b) all non exclusive easements for use, enjoyment, access, ingress, egress, encroachment, maintenance, repair, drainage, support and for other purposes, all as described in the Declaration referred to below, and (c) all exclusive rights for use, possession and enjoyment in and to that portion of said Association Common Area of Parcel One as shown on the Plan and as defined in the Declaration, and (d), all shown and defined as the "Balcony", "Courtyard", "Garage/Storage/Stairs" and/or "Porch" Exclusive Use Common Areas as shown on said Condominium Plan;

Parcel Three:

Nonexclusive rights appurtenant to Parcel One for access, ingress, egress, encroachment, repair, drainage, support, and for other purposes, all as described in the "Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Riva on the River" ("Declaration") which recorded June 17, 2005, as Document No. 2005-0028861 of the Official Records of said County;

Parcel Four:

An exclusive right for use, possession and enjoyment of a garage/storage/stairs appurtenant and adjacent to Parcel One, which is shown on the Condominium Plan, for use as may be permitted in the Declaration.

Parcel Five:

An exclusive right for use, possession and enjoyment for a porch appurtenant and adjacent to Parcel One, which is shown the Condominium Plan, for use as may be permitted in the Declaration.

Parcel Six:

An exclusive right for use, possession and enjoyment for a courtyard appurtenant and adjacent to Parcel One, which is shown on the Condominium Plan, for use as may be permitted in the Declaration.

A Portion of Assessor's Parcel Number: ████0-451

## BALLOON ADDENDUM TO MORTGAGE, DEED OF TRUST OR SECURITY DEED

Date __September 20, 2005__

1. BORROWER(S)  __MAY DAVID HENG__

Property Address __2465 GENOVA ST UNIT 5__
__WEST SACRAMENTO California 95691__

2. DEFINED TERMS; ADDENDUM A PART OF THE SECURITY INSTRUMENT. "Addendum" means this Balloon Addendum to Mortgage, Deed of Trust or Security Deed which is attached to, made a part of and amends and supplements the Mortgage, Deed of Trust or Security Deed ("Security Instrument") which Borrower(s) gave to    National City Mortgage a division of
National City Bank of Indiana                          ("the Lender") and which is dated the same date as this Addendum. The Security Instrument secures the Note and Security Agreement ("Note") and covers the property described therein located at the address set forth above. The term "the Lender" includes Lender's successors and assigns. In the event there are any conflicts between this Addendum and the Security Instrument or the Note, the provisions of the Addendum will control.

3. BALLOON NOTE. The final payment due under the Note is larger than the previous monthly payments. The final payment includes a substantial payment of principal. The Note is commonly called a "balloon note."

4. BALLOON NOTE AGREEMENT. Borrower(s) understand and agree as follows:

THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH IN THE SECURITY INSTRUMENT. THE BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. THE BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT THE BORROWER MAY OWN, OR THE BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER THE BORROWER HAS THIS LOAN WITH, WILLING TO LEND THE BORROWER THE MONEY. IF THE BORROWER REFINANCES THIS LOAN AT MATURITY, THE BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF THE BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

5. SIGNATURES. BORROWER HAS READ AND AGREES TO ALL PROVISIONS OF THIS ADDENDUM.

__MAY DAVID HENG__                          X _____
Type or print name                               Signature

_____             X _____
Type or print name                               Signature

_____             X _____
Type or print name                               Signature

_____             X _____
Type or print name of                            Signature

IN2BMTG                                                           (01/05)

# Original Note

Loan No ████4287

Orig Source Code: B

Borr Last Name: **HENG**

Borr First Name: **MAY**

NCM PRODUCT CODE: GO23015

Disbursement DATE: 9/27/2005